# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of James C. Cox, Jr.,      Respondent.

Appellate Case No. 2016-000925

---

Opinion No. 27642
Submitted May 24, 2016 - Filed June 22, 2016

---

## PUBLIC REPRIMAND

---

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina
C. Todd, Assistant Disciplinary Counsel, both of
Columbia, for Office of Disciplinary Counsel.

James C. Cox, Jr., of Hartsville, *pro se*.

---

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to
the imposition of a public reprimand or definite suspension not to exceed nine (9)
months.  In addition, respondent agrees to pay the costs incurred in the
investigation and prosecution of this matter by ODC and the Commission on
Lawyer Conduct (the Commission) within thirty (30) days of the imposition of
discipline.  He further agrees to complete the Legal Ethics and Practice Program
Ethics School, Trust Account School, and Law Office Management School within
one year if a public reprimand is issued and no later than one year after
reinstatement if a period of suspension is imposed.  We accept the Agreement,
issue a public reprimand, and impose conditions as stated hereafter in this opinion.
The facts, as set forth in the Agreement, are as follows.

## Facts and Law

## Matter I

Edward E. Saleeby, Sr., was the managing partner of Saleeby, Saleeby, and Herring, and remained so until his death in 2002. In 1971, respondent was hired as an associate at Saleeby, Saleeby and Herring, P.A. Respondent became an equity partner during the 1970s.

Edward E. Saleeby, Jr., (Mr. Saleeby) joined the firm in 1978. Mr. Saleeby became a partner approximately two years before his father's death and became managing partner upon his father's death.

A few years after his father's death, Mr. Saleeby hired paralegal Rebecca Puleo Shaw who had previously worked for the firm. In the years that followed, Mr. Saleeby was often absent from the office due to health and personal problems but remained managing partner. In April of 2003, Shaw began misappropriating funds from the firm's trust account. She continued misappropriating trust account funds until she was terminated in March of 2008 for other reasons.

During Shaw's employment, firm procedures required preparation of a disbursement sheet itemizing all receipts and disbursements associated with the case. The disbursement sheet was always reviewed with the client and respondent almost always reviewed the disbursement sheets in his cases before they were sent to the office manager. The office manager was to issue checks based on figures listed on the disbursement sheet and the staff member assisting on the file would prepare letters and mail payments to the respective parties.

Shaw did not have authority to issue or sign checks. Although there is evidence that in at least one case she prepared an alternate disbursement sheet, Shaw generally was able to request the issuance of trust account checks without proving the disbursements were proper. This was the result of a breakdown in official procedures without the knowing assistance of the office manager.

Sometimes, Shaw would have a check issued to a fictitious payee and, at other times, she would request a check payable to the client or a relative of the client. Shaw generally, but not always, chose to issue a check in an amount equal to the savings that resulted from medical providers agreeing to accept reduced payments.

She then forged the payee's endorsement, endorsed the check with her own signature, and cashed the check or deposited it into her own account.

In total, Shaw misappropriated $349,227.34 through the issuance and negotiation of 201 checks. Seventeen of those checks totaling $75,766.95 were issued in connection with an underage client whose medical bills exceeded the total insurance available in the case. The child's mother filed a complaint. The majority of the improperly issued and negotiated checks, including those issued in the child's case, were issued on Mr. Saleeby's files, however, some of the misappropriations occurred on respondent's files and those of firm associates.

Respondent discovered Shaw's misappropriation when the mother of one of his clients reported her son continued receiving medical bills after settling his case. Respondent learned a check had been issued in connection with the case to a person neither he nor his client's mother recognized. Respondent attempted to reach Shaw as she had worked on the file, but she had since been terminated on other grounds. Shaw spoke with the office manager. Shaw admitted the payee was fictitious. Shaw failed to appear for a scheduled meeting with respondent, but provided the office manager with a cashier's check for $17,288.61 and a list of files from which she had stolen money. The subsequent investigation revealed the theft was more widespread than Shaw acknowledged.

The firm reported Shaw to law enforcement. Shaw was charged with one count of breach of trust in excess of $10,000 and ten counts of forgery. She entered a guilty plea to breach of trust and four counts of forgery. Shaw was sentenced to a total of ten years imprisonment, suspended upon service of nine months and five years of probation. Shaw was ordered to pay $155,000 in restitution. The firm also filed a lawsuit against Shaw which it later voluntarily dismissed.

The firm incurred great expense to determine the total amount Shaw misappropriated and to repay the proper parties.

Respondent acknowledges Shaw's theft could have been prevented if checks were only issued based on the disbursement sheet signed by the client and reviewed by the assigned attorney or if the assigned attorney reviewed the checks issued against the signed disbursement sheet. Respondent further admits Shaw's theft could have been discovered and stopped had the backs of the cleared checks been reviewed during the monthly reconciliation process. In addition, respondent admits the firm was only reconciling the receipt and disbursement journal to the bank statement.

Neither the disbursement sheets nor the client ledgers were used in the reconciliation process.

During some of Shaw's employment, respondent was her direct supervisor and, at other times, Mr. Saleeby was her direct supervisor. Respondent acknowledges that, as a partner in the firm, he was required to make reasonable efforts to ensure the firm had measures in place giving reasonable assurance that the firm's non-lawyer staff conducted themselves in a manner that was compatible with his professional obligations. Respondent further acknowledges that, as her direct supervisor during part of her employment, he was obliged to make reasonable efforts to ensure that Shaw conducted herself in a manner compatible with his professional obligations. Respondent admits the firm's trust account practices were inadequate.

Respondent admits that his conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15 (lawyer shall safekeep client property); Rule 5.3(a) (partner shall make reasonable efforts to ensure that firm has in effect measures giving reasonable assurance that non-lawyer employee's conduct is compatible with professional obligations of lawyer); and Rule 5.3(b) (lawyer having direct supervisory authority over non-lawyer employee shall make reasonable efforts to ensure that employee's conduct is compatible with professional obligations of lawyer). In addition, respondent admits his conduct violated the financial obligations of Rule 417, SCACR.

## Matter II

Respondent agreed to serve as attorney for an estate. The will called for the deceased's widow and one of his children to serve as co-personal representatives of the estate. Although the matter was complicated by disputes over ownership of a business and the validity of a purported codicil, respondent admits he failed to diligently handle the matter and failed to keep one of the co-personal representatives and the heirs informed of the status of the matter. During the pendency of the matter, respondent's office scheduled a meeting with the deceased's children; respondent failed to appear at the meeting, failed to explain his absence, and failed to reschedule the meeting.

Respondent admits that his conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); and Rule 1.4 (lawyer shall keep client reasonably informed about status of matter).

## Matter III

Respondent wrote to a court reporter and requested a trial transcript. He specifically agreed to pay the per page charge for the transcript. Respondent did not pay the court reporter despite receiving an invoice for $700.80 with the transcript and four subsequent reminder invoices. The reminder invoices clearly stated the total amount due and the number of times payment had been requested.

Respondent did not pay the court reporter until after she filed a complaint approximately ten months after her final invoice. Respondent asserts that his failure to timely pay the court reporter was an oversight caused by the fact that transcripts had to be ordered from more than one court reporter for the multiple day trial and his belief that another attorney who chose to appeal had paid for the transcript. However, respondent acknowledges that he should have investigated the matter after receiving reminder invoices, especially since the court reporter mentioned the confusion about the necessity of paying multiple court reporters for the transcripts of the trial in her cover letter with the final invoice.

Respondent admits that his conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 4.4(a) (in representing client, lawyer shall not use means that have no substantial purpose other than to delay or burden third person); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice).

## Matter IV

In mid-August 2012, Mr. Doe was arrested for criminal domestic violence arising from an incident involving the mother of his children. On September 10, 2012, an order of protection was issued. The mother received custody of the children and Mr. Doe was permitted alternating weekend visitation. The order of protection was valid for six months.

Mr. Doe hired respondent the day after the order of protection was issued. No fee agreement was signed. Mr. Doe maintains respondent was to help him obtain a more permanent visitation order.

Respondent requested a jury trial in the criminal matter. He also moved for a rehearing on the order of protection, but took no further action on that matter after the original rehearing date was cancelled due to a scheduling conflict. Respondent

also failed to file the domestic action, but filed an answer and motion for change of venue in response to mother's March 2013 action for custody and child support. Mother requested a temporary hearing in her action which was continued and never rescheduled.

In September of 2014, Mr. Doe advised respondent he had lost contact with his children. Respondent requested law enforcement conduct a welfare check; the house was found vacant. Respondent then requested a hearing and attempted to negotiate a consent order, but the hearing was continued because of a scheduling conflict and an agreement was not reached. In February 2015, mother's action was dismissed pursuant to the 365-day rule. By this time, Mr. Doe had hired another attorney to help him obtain a visitation order. Respondent remains counsel of record on Mr. Doe's pending criminal charge.

Respondent acknowledges he failed to adequately consult with Mr. Doe regarding the scope of his objectives and thus failed to clearly establish the scope of the representation. He further admits he failed to keep Mr. Doe informed about the status of his efforts in regard to the order of protection and mother's domestic action. Finally, respondent admits he failed to diligently pursue Mr. Doe's goal of securing a visitation schedule with his children.

Respondent admits that his conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); Rule 1.4 (a)(2) (lawyer shall reasonably consult with client about means by which client's objectives are to be accomplished); Rule 1.4(a)(3) (lawyer shall keep client reasonably informed about status of matter); and Rule 1.5(b) ( scope of representation shall be communicated to client, preferably in writing, before or within reasonable time after commencing representation).

## Matter V

Ms. Roe hired respondent to seek custody of one of her children who was living with a relative pursuant to a South Carolina Department of Social Services (DSS) order. Respondent accepted a fee of $2,000. He later agreed to represent Ms. Roe in a divorce without any additional fee. The divorce was handled without incident.

As to the custody matter, the relative with custody ultimately agreed to allow the child to live with Ms. Roe on a temporary basis. Respondent asked DSS whether the agency was a necessary party to a temporary change of custody. A staff

attorney for the agency responded it was not necessary for the agency to be named as a party, but asked respondent to forward a copy of the order to the agency if the change of custody occurred. Ms. Roe also wanted a formal order.

Respondent did not seek a court order for the temporary change of custody and did not seek a permanent change of custody. The child has now reached the age of majority.

Respondent admits his conduct violated the following provision of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client).

Respondent also admits his conduct in each of these matters constitute grounds for discipline under Rule 7(a)(1) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers).

## Conclusion

We find respondent's misconduct warrants a public reprimand. Accordingly, we accept the Agreement and publicly reprimand respondent for his misconduct. Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission within thirty (30) days of the date of this opinion and shall complete the Legal Ethics and Practice Program Ethics School, Trust Account School, and Law Office Management School within one (1) year of the date of this opinion. Respondent shall provide proof of his completion of each program to the Commission no later than ten (10) days after the conclusion of each program.

**PUBLIC REPRIMAND.**

**PLEICONES, C.J., BEATTY, KITTREDGE, HEARN and FEW, JJ., concur.**